# United States Court of Appeals
## For the First Circuit

No. 13-1336

CARMEN M. OCASIO-HERNÁNDEZ, GERARDO PIZARRO-PIZARRO, JORGE L. RODRÍGUEZ-FIGUEROA, ÁNGEL L. FIGUEROA-ROLÓN, HÉCTOR G. GUERRERO-FRAU, DIANA D. RODRÍGUEZ-VICENTE, NYDIA DÍAZ-FRANCISCO, CARLOS SANTOS-RIVERA, JUAN CARRASQUILLO-LÓPEZ, FELÍCITA RIVERA-BÁEZ, IVÁN RIVERA-CANALES, WILLIAM BURGOS-CASTELLANOS, VÍCTOR M. CAMACHO-PIZARRO, ÁNGEL BÁEZ-TORRES, JOHN DOE-01, CONJUGAL PARTNERSHIP DOE-OCASIO, JANE DOE-01, CONJUGAL PARTNERSHIP PIZARRO-DOE, JANE DOE-02, CONJUGAL PARTNERSHIP RODRÍGUEZ-DOE, JANE DOE-03, CONJUGAL PARTNERSHIP FIGUEROA-DOE, JANE DOE-04, CONJUGAL PARTNERSHIP GUERRERO-DOE, JOHN DOE-02, CONJUGAL PARTNERSHIP DOE-RODRÍGUEZ, JOHN DOE-03, CONJUGAL PARTNERSHIP DOE-DÍAZ, JANE DOE-05, CONJUGAL PARTNERSHIP SANTOS-DOE, JANE DOE-06, CONJUGAL PARTNERSHIP CARRASQUILLO-DOE, JANE DOE-07, CONJUGAL PARTNERSHIP RIVERA-DOE, JOHN DOE-04, CONJUGAL PARTNERSHIP CARRASQUILLO-DOE, CONJUGAL PARTNERSHIP RIVERA-DOE; CONJUGAL PARTNERSHIP DOE-RIVERA, JANE DOE-08, CONJUGAL PARTNERSHIP BURGOS-DOE, JANE DOE-09, CONJUGAL PARTNERSHIP CAMACHO-DOE, JANE DOE-10, CONJUGAL PARTNERSHIP BÁEZ-DOE,

Plaintiffs, Appellants,

v.

LUIS G. FORTUÑO-BURSET, in his personal capacity and as Governor of the Commonwealth of Puerto Rico, LUCÉ VELA, in her individual and official capacity as First Lady, VELMARIE BERLINGERI-MARÍN, in her individual and official capacity as Administrator of the Governor's Mansion, JUAN CARLOS BLANCO, in his individual and official capacity as Chief of Staff, CONJUGAL PARTNERSHIP FORTUÑO-VELA, JOHN DOE, CONJUGAL PARTNERSHIP DOE-BERLINGERI, JANE DOE, CONJUGAL PARTNERSHIP BLANCO-DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
<u>Circuit Judges</u>.

    <u>Carlos Antonio Del Valle Cruz</u>, with whom <u>Eileen Landrón
Guardiola</u>, <u>Eduardo Vera Ramírez</u>, <u>Luis A. Rodríguez Muñoz</u>, and
<u>Landrón & Vera, LLP</u> were on brief, for appellants.
    <u>Margarita Mercado-Echegaray</u>, Solicitor General, Department of
Justice, for appellees.

January 20, 2015

**THOMPSON, <u>Circuit Judge</u>**. In 2009, the plaintiffs -- fourteen maintenance, domestic, and warehouse workers -- embarked on a quest to seek some relief after being abruptly fired from the Puerto Rico executive mansion shortly after a newly elected governor took the helm.[1] The plaintiffs -- to whom we'll refer as "the workers" -- sued then-Governor Luis Fortuño-Burset ("Fortuño"), his wife, and two executive staffers, alleging that they were terminated solely because they affiliated with Fortuño's rival political parties. The firings, the workers have maintained, amounted to political discrimination prohibited by the First Amendment.

After six years and two appeals, this voyage has reached its end -- for the reasons discussed below, we affirm the district court's summary judgment disposal of the workers' political discrimination claim.[2]

## I. BACKGROUND

### A. The Factual Skeleton

Because we are reviewing a summary judgment motion, we recite the facts "in a light as favorable to [the workers] as the

---

[1] One of the fourteen plaintiffs worked at the governor's country home, and not at the executive mansion. This variance does not affect our analysis.

[2] The workers also appeal the district court's denial of their motion to reconsider the summary judgment decisions, which we address below.

record will reasonably allow." Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 267 (1st Cir. 2014).

In November 2008, Fortuño, of Puerto Rico's New Progressive political party ("NPP"), defeated the incumbent, a member of the NPP's primary rival, to become Puerto Rico's newly elected governor. Fortuño took office on January 2, 2009, bringing on board a chief of staff, Juan Carlos Blanco-Urrutia ("Blanco"), and an administrator, Velmarie Berlingeri-Marín ("Berlingeri"). Through an executive order, Fortuño authorized Berlingeri to "take any necessary actions and sign any necessary official documents related to the administration of the Office of the Governor," which included administering the executive mansion, where the governor lived and worked.

A few days after taking office, Fortuño issued another executive order declaring a statewide fiscal emergency, authorizing a hiring freeze across state agencies, and requiring certain spending cuts. The executive order required each state agency to eliminate thirty percent of "all authorized trust service positions." Relevant to this case, "trust service" employees -- one of several categories of employment types within the Puerto Rico government -- could be "freely remove[d]," or, in other words, terminated without cause.

-4-

Shortly after the executive order was issued, each of the plaintiffs (all of whom were trust employees)[3] was let go either in February or March 2009, by way of written termination letters signed by Berlingeri.  The termination letters (which were all identical in substance) did not provide a specific reason for the firings, citing only to the regulations allowing for "trust service" employees to be "freely selected and freely dismissed." Berlingeri has since asserted that some of the workers were fired -- based on the recommendation of their immediate supervisors -- because of their poor work performance; others, she claimed, were fired due to the budget cuts.

## B. The (Long) Procedural History

Wasting no time, in March 2009, the workers sued Fortuño, his chief of staff (Blanco), his administrator (Berlingeri), and his wife, First Lady Luz E. Vela-Gutiérrez ("Vela"), asserting that each of the defendants had a role in their allegedly unlawful terminations and claiming they were fired because they affiliated with non-NPP political parties.  The workers' complaint brought § 1983 claims,[4] alleging violation of their due process and equal

---

[3] During the summary judgment proceedings before the district court, the workers took issue with documentation the defendants used to verify that a few of the plaintiffs were trust employees. But the plaintiffs did not dispute there (or in their briefing to us) that they were in fact part of the trust service.

[4] 42 U.S.C. § 1983 allows plaintiffs to sue for constitutional violations.

protection rights under the Fifth and Fourteenth Amendments and their right to free speech under the First Amendment.[5]  They also sought relief under numerous Puerto Rico laws and the Puerto Rico constitution.

In July 2009, the defendants moved to dismiss the workers' claims, arguing that the complaint failed to state a plausible claim for relief.  The district court allowed that motion and dismissed all of the federal and state claims against all of the defendants.

Apparently abandoning their due process claim, the employees appealed only the dismissal of their First Amendment and state law causes of action;[6] we vacated the dismissal of those claims and remanded them to the district court.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 19 (1st Cir. 2011).

With the case back before the trial court, discovery ensued.  At its close, the defendants moved for summary judgment on the remaining political discrimination claim, arguing that the workers could not show that the defendants knew of their political

---

[5] The workers later amended their complaint.  We refer to the amended complaint (which is the operative one in this case) as "the complaint."

[6] Readers may be wondering why this case feels so familiar. The answer is likely because our 2011 decision, which involved the same parties, has become well known (and frequently cited) for its detailed explanation of the applicable standard of review for a motion to dismiss.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12-13 (1st Cir. 2011).

views or that politics was a reason for the terminations. In a written order, the court allowed the motion as to Fortuño, Vela, and Blanco on the grounds that there was no evidence that these defendants were aware of the workers' political affiliations or that they were personally involved in the terminations. The court held off on Berlingeri because it wanted to engage in "additional and deeper analysis" and hear oral argument before deciding whether to dismiss the claim against her. The court later ended up dismissing Berlingeri from the case as well, in a separate written decision concluding that there was insufficient evidence that political affiliation was the reason for the dismissals.[7] The workers then moved the district court to reconsider its judgment, which the court denied.

The workers now bring the case to us once again; on resurgence, they ask us to reverse the district court's summary judgment disposal of their First Amendment claim, as well as the court's subsequent denial of their motion to amend the judgment.

We address both rulings in turn.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. Velázquez-Pérez, 753 F.3d at 270. Summary judgment is appropriate only if the moving party "shows that there is no

---

[7] The court also dismissed the state law claims against all the defendants, which the workers do not appeal.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We consider a dispute genuine if "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." Velázquez-Pérez, 753 F.3d at 270 (citation and quotations omitted). But "[c]onclusory allegations, improbable inferences, and unsupported speculation[] are insufficient to establish a genuine dispute of fact." Id. (citation and quotations omitted).

To succeed in showing that there is no genuine dispute of material fact, the moving party must direct us to specific evidence in the record that would be admissible at trial. That is, it must "affirmatively produce evidence that negates an essential element of the non-moving party's claim," or, using "evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (citations omitted). "[I]f the summary judgment record satisfactorily demonstrates that the plaintiff's case is, and may be expected to remain, deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden." Id. at 133.

### III. DISCUSSION

#### A. Summary Judgment

The dispute before us arises from the well established constitutional mandate prohibiting government officials from firing

-8-

public employees on the basis of their political affiliations.[8]  To prove political discrimination, the workers must show that: (1) they and the defendants have "opposing political affiliations," (2) the defendants were aware of the workers' political affiliations, (3) an "adverse employment action" (e.g., an employment termination) occurred, and (4) "political affiliation was a substantial or motivating factor for the adverse employment action."[9]  Ocasio-Hernández, 640 F.3d at 13.

Here, the district court held in a written ruling that the workers "failed to come up with any evidence to the effect that [Fortuño, Vela, and Blanco] were aware of their adverse political affiliation, and as such, that partisan politics played a

---

[8] While not applicable in this case, an exception to this rule is when "political affiliation is an appropriate requirement for the position." García-González v. Puig-Morales, 761 F.3d 81, 92 (1st Cir. 2014) (citation and quotations omitted).

[9] The workers expend a good bit of effort in their opening brief trying to convince us that they have successfully circumvented the defendants' Mt. Healthy defense.  See Padilla-Garcia v. Guillermo Rodriquez, 212 F.3d 69, 74 (1st Cir. 2000) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)) (holding that after the plaintiffs make a prima facie showing of political discrimination, the government official is then "given the opportunity to establish that it would have taken the same action regardless of the plaintiff's political beliefs"); Padilla-Garcia, 212 F.3d at 77 ("[T]he plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor [in the termination decision].").  We need not reach Mt. Healthy at all in this case because -- as we explain below -- the workers have not met their threshold prima facie burden.

substantial or motivating role" in the terminations.[10]  Later, in a separate written ruling addressing the remaining defendant, Berlingeri, the trial judge acknowledged that the "parties disagree whether Berlingeri had knowledge of Plaintiffs' political affiliations," but "refrain[ed] from passing judgment on the knowledge requirement" because it was "dismiss[ing] Plaintiffs' claims on alternative grounds," i.e., causation.

As we explain below, we agree with the district court that the record lacks sufficient evidence that Fortuño, Vela, and Blanco were aware of the plaintiffs' political affiliations.  And, although the district court did not address Berlingeri's knowledge, we conclude that the record does not provide enough evidence of hers either, and affirm both summary judgment rulings on that ground.[11]

---

[10]  The court also found that there was no evidence that Fortuño, Vela, or Blanco were personally involved in the terminations, which is also a requirement for any constitutional claim against a government official.  See Ocasio-Hernández, 640 F.3d at 16.  Because we are affirming on other grounds, we need not address that issue.

[11]  With the exception discussed below, the defendants do not make an issue of elements one or three of the political discrimination test on appeal. They do argue (as they did before the district court) that the workers' case fails as to both the knowledge and causation prongs (elements two and four) as to all the defendants.

The district court dismissed the claim against Berlingeri as to a single plaintiff, Iván Rivera, on the ground that he did not have an opposing political affiliation (element one of the political discrimination test).  Following suit, the defendants argue that because Rivera "is a member of the NPP and admittedly voted for Fortuño . . . in the 2008 general elections," he does not

We delve into our discussion by first noting that the workers' opening brief does not address the sufficiency of evidence of knowledge, focusing instead on causation. At oral argument, counsel explained the workers' position that "given that the [trial] judge did not decide [knowledge,] . . . [that issue] was to be decided in favor of the plaintiff, and that for purposes of appeal, [the court] must assume that the defendants knew of [the workers'] political affiliation."

As we suggested at oral argument, counsel's statement is incorrect in three respects.

First, the workers appear to have imparted a holding that was specific to Berlingeri on the rest of the defendants. As we noted above, the district court <u>did</u> rule on knowledge as to defendants Fortuño, Blanco, and Vela, but separately from its ruling on Berlingeri.[12]

---

have an opposing political affiliation. As we have noted before, however, being a member of the same political party does not necessarily alter the "constitutionally protected status" of a person's political affiliations. <u>Padilla-Garcia</u>, 212 F.3d at 76 & n.6. <u>See also</u> <u>Anthony</u> v. <u>Sundlun</u>, 952 F.2d 603, 606 (1st Cir. 1991) ("We do not think that liability in a political discrimination case involving non-policymaking positions necessarily depends on a finding that the defendants knew to a certainty that the ousted jobholders were members of the opposition party."). We need not address the specifics of what might save Rivera on the first prong, however, because in any event, we affirm on the lack of evidence regarding the defendants' knowledge of any of the plaintiffs' political affiliations.

[12] Given that the summary judgment ruling that addressed the claims against Fortuño, Vela, and Blanco was not included in the notice of appeal, perhaps the workers simply overlooked the fact

-11-

Second, the workers incorrectly suggest that the district court's choice not to address Berlingeri's knowledge equated to a ruling in their favor on that particular issue.

Third, based on their misapprehension that the district court ruled in their favor on Berlingeri's knowledge, the workers assume that we are now obligated to adopt the district court's ruling in that regard, thus choosing to focus their arguments on the causation element.

Here are the problems with the workers' logic.  On de novo review of a summary judgment motion, we undertake the same inquiry as the district court -- we look at whether the supported facts, when considered as a whole, are legally sufficient to satisfy each element of a claim.  Here, the district court did not decide one way or another whether the knowledge element was satisfied as to Berlingeri.  It simply found that there was insufficient evidence in the record to satisfy a different element

---

that those particular defendants were dismissed in a separate ruling from Berlingeri.

Despite the workers' failure to include both summary judgment rulings in the notice of appeal, a mistake that generally divests us of jurisdiction under Federal Rule of Appellate Procedure 3(c)(1)(C), we still review them both.  The notice of appeal references the judgment entered against all the defendants, and both parties briefed (and argued) the merits of the dismissals of the First Amendment claim as to all the defendants.  Therefore, despite it being "carelessly drafted," the notice of appeal "provides a sufficient foundation for the exercise of appellate jurisdiction over the original order of dismissal."  Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002).

of the workers' claim (i.e., causation), and dismissed Berlingeri on that ground.

Even if the district court had ruled, in the workers' favor, that the record showed sufficient evidence of Berlingeri's knowledge, on de novo review, we do not just assume the district court was correct in its ruling. Rather, we take a fresh look at the record to determine for ourselves whether the plaintiffs met their evidentiary burden.[13] In so doing, "we are not bound by the district court's decisional calculus but, rather, may affirm the decision below on any ground made manifest by the record." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007).

As we will explain, upon our review of the record, a jury could not reasonably infer that any of the defendants were aware of the workers' political affiliations. Because the plaintiffs' case fails on that element, we need not address any others.

## Knowledge

Even though the workers mistakenly presumed that the knowledge element was satisfied as to all of the defendants, we gave the workers a chance at oral argument to point us to what, if any, evidence in the record suggests that any of the defendants were aware of their political affiliations. The workers conceded

---

[13] We further note that we allowed the workers' motion to waive the filing of an appendix and, per the workers' request, conducted our review of this case "on the original record." Thus, we had no choice but to independently scour the summary judgment record.

-13-

that the record offered no direct evidence that the defendants knew of their political inclinations, but urged us to infer that because the workers were hired by a prior administration, the defendants must have known that they were not affiliated with Fortuño's party.

We recognize that political discrimination, which often turns on an employer's cloaked motives, can be hard for a worker to to prove. In so recognizing, we have consistently held that circumstantial evidence can suffice to show a defendant's knowledge of a plaintiff's political party. See, e.g., Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 44 (1st Cir. 2007) (noting that a jury could reasonably infer that the defendant was aware of the plaintiff's NPP affiliation based on testimony that the plaintiff "spoke openly about her political views and sat in the NPP portion of the de facto segregated cafeteria"). We have also held that a government official's knowledge that an employee was hired by a prior administration -- when considered in tandem with other relevant facts -- could certainly help prove the defendant's knowledge of the employee's political affiliation. See, e.g., Anthony v. Sundlun, 952 F.2d 603, 606 (1st Cir. 1991) ("Given the nature of the [employees'] positions, the defendants' knowledge that the plaintiffs had originally been hired by the previous [] administration, the timing of the moves, the identities of those consulted, the lack of any legitimate reason for ousting the incumbents, and the partisan connections of the replacement

-14-

workers, it seems disingenuous to suggest that [the defendant] acted without regard to the politics of the situation.").

Beside the fact that here, the workers' argument lies on a shaky factual premise (the defendants claim, and the workers do not refute, that two of the plaintiffs were actually hired under an NPP administration), more generally, a defendant's mere knowledge that an employee was hired by a prior governor -- without more -- is not sufficient to show political discrimination.  Were that the case, a newly elected governor could never impose budget-related (or other legitimate) layoffs.  See Martinez-Vélez, 506 F.3d at 42 (concluding that if reorganization "was hatched as a plan to clear the decks of NPP [employees] so that PDP [employees] could be favored, it was up to plaintiffs to conduct the necessary discovery and offer the evidence [at trial].  Liability without such proof would effectively preclude any post-election reorganization that happens to affect adversely employees connected to the previously dominant party.").

Significantly, as the defendants have pointed out, the workers here have directed us to no evidence showing that the defendants they sued had knowledge of their particular political affiliations.  The record actually suggests the opposite -- a number of the plaintiffs testified at their depositions that mansion employees did not usually discuss at work the political parties to which they belonged, employees' political affiliations

were not common knowledge within the mansion, and the plaintiffs did not discuss politics in general at work. The workers have directed us to no evidence in the voluminous record to refute the veracity of their own testimony. See Torres-Martínez v. P.R. Dep't of Corr., 485 F.3d 19, 22 (1st Cir. 2007) ("[A]s to issues on which the summary judgment target[s] bear[] the ultimate burden of proof, [they] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.") (citation and quotations omitted). When all is said and done, the workers have offered no proof that others in the mansion -- let alone the higher ups -- had knowledge of their political leanings. As we have held in the past, while "an incoming administration may not use a systematic reorganization to effectuate otherwise impermissible terminations," in order to defeat summary judgment, the plaintiffs have the burden of directing us to sufficient record evidence to "create a triable issue." Rodríguez-Sanchez v. Municipality of Santa Isabel, 658 F.3d 125, 130-31 (1st Cir. 2011) (citation omitted).

We acknowledge that it is certainly curious that more than a dozen workers -- almost none of whom affiliated with their new boss's political party -- were all terminated within a couple months of the new governor's move into the mansion.[14] But we cannot

---

[14] While the "temporal proximity between the change in political administration and the turnover of staff . . . unquestionably contributes . . . to the reasonable inference that

-16-

allow a case to proceed to trial based on unsubstantiated suspicion. The workers do not even offer generalized statistical evidence showing how many NPP employees were retained after the layoffs (as compared to non-NPP employees), whether NPP employees were also given the boot, or whether the terminated workers were replaced with NPP affiliates. See Anthony, 952 F.2d at 606 (noting that even though the record showed that most of the ousted plaintiffs were replaced by members of the opposing political party, "these raw numbers alone [still] are likely insufficient to ground a finding of patronage dismissal"); Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 8 (1st Cir. 2000) (noting that in their unsuccessful attempt to defeat summary judgment, "plaintiffs' most viable claim, the allegation that similarly situated [opposing party] members were not fired, lacked factual support," and that plaintiffs "failed to provide names or other specific factual information supporting their claim that the [government] replaced them with new hires from the [opposing political party]"). Because the workers have simply failed to meet their burden, we must affirm the district court's grant of summary judgment.

---

the employment decision was politically motivated," Ocasio-Hernández, 640 F.3d at 18, dubious timing, on its own, is still not enough to prove the defendants had a discriminatory motive, id., let alone knowledge of a plaintiffs' politics. See also Anthony, 952 F.2d at 606 (considering timing of the terminations as one of several circumstantial facts used to infer the defendants' knowledge of plaintiffs' political affiliations).

### B. Motion to Alter Judgment

The workers also argue that the district court erred in denying their request to reconsider the judgment, pursuant to Federal Rule of Civil Procedure 59(e).  We grant Rule 59(e) relief "when the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations."  Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (citation and quotations omitted).  The workers' only articulated basis for appealing the denial of the motion to reconsider is the "permitting of the evidence which was not properly before the Court."  While the workers do not elaborate on what evidence they refer to, based on discussion earlier in their brief, we assume they object to the district court's apparent reliance on deposition testimony stating that Berlingeri received negative employee evaluations from the workers' direct supervisors.  The workers contend that this testimony evidence would be inadmissible.

Whether the district court considered inadmissible hearsay to resolve the causation question is an orthogonal issue, given that we are affirming on other of this case's shortfalls.  We needn't say more on the point.

## IV. THE FAREWELL

The first time this case was before us, we expressed outright our appreciation that the workers' allegations, as set out in their complaint, "unquestionably describe[d] a plausible discriminatory sequence that is all too familiar in this circuit." Ocasio-Hernández, 640 F.3d at 19. For laundry room workers, and maintenance staff, and warehouse employees -- who have no direct say in or influence on the policies of the government by which they are employed -- to face recurring fear that their livelihood will be pulled out from under them every time the state sees a change in leadership is, to say the least, a sad state of affairs. As the district court judge suggested, perhaps the workers here were unable to prove their case because they were stymied by the mechanics of litigation deadlines. Or perhaps the facts of their case simply didn't stack up. But unlike our assessment of the sufficiency of a complaint, where we take the veracity of the allegations at face-value, once summary judgment rolls around, the proof is in the pudding.

For the reasons discussed above, we affirm both summary judgment dismissals of the workers' First Amendment claim, as well as the denial of their motion to reconsider.