# United States Court of Appeals
## For the First Circuit

No. 19-1880

FRANKLIN B. ABERNATHY,

Plaintiff, Appellant,

v.

KRYSTAL ANDERSON,

Defendant, Appellee,

CAPTAIN SHAUN DEWEY; SERGEANT MICHAEL RUMERY;
THOMAS GROBLEWSKI, MD, Medical Director for UMass Correctional
Health Inc.; OFFICER GERARD BREAU, a/k/a John Doe II;
LIEUTENANT DAVID DARLING, a/k/a John Doe I;
OFFICER KYLE SHELDON, a/k/a John Doe III; OFFICER SHAWN GYLES,
a/k/a John Doe IV; BRUCE GELB; LUIS SPENCER;
JOHN DOE V, Officer for the D.O.C.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Howard, Chief Judge,
and Barron, Circuit Judge.*

---

* Judge Torruella heard oral argument in this matter and
participated in the semble, but he did not participate in the
issuance of the panel's opinion in this case. The remaining two
panelists therefore issued the opinion pursuant to 28 U.S.C.
§ 46(d)

Ezekiel L. Hill, Diana E. Coleman, and Goodwin Procter LLP on brief, for appellant.

Tory A. Weigand and Morrison Mahoney LLP on brief, for appellee.

December 18, 2020

**Per curiam**. Plaintiff-Appellant Franklin B. Abernathy ("Abernathy"), an inmate at Souza-Baranowski Correctional Center ("SBCC"), appeals the district court's order granting summary judgment on his deliberate indifference claim brought under 42 U.S.C. § 1983 against Defendant-Appellee Krystal Anderson ("Anderson"), a nurse at SBCC. Because we agree with the district court that Abernathy has failed to establish a triable issue that he had a serious medical need to which Anderson was indifferent, we affirm.

## I. Background

### A. Factual Background

On April 3, 2013, Abernathy was incarcerated at SBCC in the J-Unit tier of the Special Management Unit. At the time, Anderson worked as a nurse at SBCC. In the morning, Correctional Officer Kyle Sheldon ("C.O. Sheldon") instructed Abernathy's cellmate, Leon Shelby ("Shelby"), to remove a blanket that was covering the rear window of the cell, which Shelby refused to do. Later that morning, Sergeant Michael Rumery ("Sergeant Rumery") accompanied Anderson for medication rounds in J-Unit. Upon reaching Abernathy and Shelby's cell for distribution of medication, Sergeant Rumery noticed the blanket covering the window and instructed Abernathy to remove it. Abernathy refused to remove the blanket because it belonged to Shelby. Sergeant Rumery then instructed Shelby to remove the blanket, which Shelby

- 3 -

once again refused to do. As a result of Shelby's refusal, Sergeant Rumery instructed Anderson not to dispense the medication and told Abernathy that he would not receive his medications until the blanket was removed from the window.[1]

Around noontime, C.O. Sheldon went to Abernathy and Shelby's cell and attempted to hand a tray of food to Shelby. Shelby, who refused to take the tray, stated that he believed his food had been tampered with, and then threw a cup of liquid at C.O. Sheldon, hitting him in the face. As a result of the altercation, it was ordered that Shelby be placed in restraints. Sergeant Rumery told Abernathy that he also needed to be placed in restraints because the correctional officers were going to open the cell to remove Shelby from it. Abernathy stuck his hands out of the cell door in order to be handcuffed. According to Abernathy, the officers "slammed" or "squeezed" the handcuffs on

---

[1] Anderson contends that Sergeant Rumery's decision to not dispense the medication was due to safety concerns because the cell was dark due to the blanket covering the window, making it unsafe to reach into the cell. Abernathy disputes that the cell was dark and asserts that he turned the light on in the cell when the interaction with Anderson and Sergeant Rumery began. Also, according to Anderson, Abernathy received his medication once "everything calmed down." Abernathy, however, claims he did not receive his medication until the following day when "[e]verything went back to normal" and that the delay caused him to experience muscle spasms ("off and on"), chest pain, and pain in his left shoulder for twenty-four hours. These discrepancies, however, do not create an issue of material fact preventing the entry of summary judgment. See infra.

- 4 -

his wrists so tightly that it affected his blood circulation, and they then pulled on the handcuffs, twisting his fingers and hands, causing bleeding and pain in the process.

Correctional officers escorted Abernathy over to the Special Management Unit medical triage room, where Anderson was the nurse on duty. According to Abernathy, even though he had blood on his body and "visible cuts, bruises, and swelling on [his] hands, wrists, and arms," Anderson refused to assess his medical needs and refused to provide him with any medication or treatment.[2]

The next day, Abernathy submitted a sick-call request, stating that he had bruises and lacerations on both arms, as well as a strained or broken wrist. In the morning, he received his medications for pre-existing conditions, including pain medication, but was not medically assessed for his alleged injuries from the day before. On April 5, 2013, the SBCC medical staff assessed Abernathy and determined that he had no bruising or

---

[2] Anderson disputes this fact, though her account has not always been consistent. In 2013, she stated to OIS investigators that on April 3, 2013 she assessed Abernathy and that he seemed to be fine and had no complaints. In 2018, however, Anderson testified in her deposition that Abernathy did not show up at the triage room for examination on April 3, and that she was never told that he wanted to be examined. Regardless, because we are reviewing a grant of summary judgment, we construe the record in the light most favorable to Abernathy, the nonmovant. See Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015).

swelling, although he did have old, already healed scars. The medical staff provided Abernathy Motrin 200mg and ordered x-rays.

On April 8, 2013, Abernathy reported the April 3 incident to Feltus Bradford, a mental health professional at SBCC. The next day, on April 9, 2013, Abernathy submitted another sick call request, this time reporting that he was suffering from a numb wrist, pain in the area near his thumb, soreness from the handcuff cutting into the flesh of his wrist, and what he thought could be "nerve damage." Medical progress notes prepared on April 10, 2013 reveal that Abernathy claimed a numb thumb, "scabbing" of the right thumb joint, tenderness on his wrist, and "ecchymosis" (i.e. bruising) on "both arms from wrist to elbow."

On April 15, 2013, x-rays were taken of Abernathy's right wrist and right thumb, showing no fractures, dislocations or other abnormalities. Progress notes from May 7, 2013, state that Abernathy complained of "hand pain," but had "no functional impairment." The medical examiner noted that Abernathy's hands had no "gross deformity" or "pain on palpation."

B. Procedural Background

In February 2015, Abernathy filed his original complaint pro se, alleging claims under 42 U.S.C. § 1983 and state tort law against Anderson and several other defendants. Abernathy later retained counsel and amended his complaint several times. Abernathy contends that Anderson's failure to assess and treat his

alleged medical needs on April 3, as well as her refusal to administer his medication, caused him physical pain, fear, and anxiety arising from not knowing the extent of his wounds.

The court dismissed the claims against all defendants, save for those against Anderson. Anderson, the sole remaining defendant, then moved for summary judgment on all claims against her: a § 1983 deliberate indifference claim for the alleged denial of medical care and treatment to Abernathy on April 3, 2013; a claim for negligence due to Anderson's alleged failure to provide medical assessment and/or treatment to Abernathy on April 3, 2013; and a claim for negligent infliction of emotional distress related to Anderson's alleged actions and/or omissions on that same day. Abernathy opposed. On July 31, 2019, the district court granted summary judgment for Anderson on all claims. Abernathy appeals only the disposition of his § 1983 claim. We thus limit our discussion accordingly.

## II. Discussion

We review a district court's grant of summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor. Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). Summary judgment may be granted only when "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a). A fact is considered material when it has the "potential to affect the outcome of the suit under the applicable law." Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quoting One Nat'l Bank v. Antonellis, 80 F.3d 606, 608 (1st Cir. 1996)). "A dispute is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'" Id. (quoting Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 351-52 (1st Cir. 1992)). The party opposing summary judgment "bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)). "For this purpose, [it] cannot rely on 'conclusory allegations, improbable inferences, acrimonious invective, or rank speculation.'" Id. (quoting Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010)).

Abernathy's § 1983 claim alleges that Anderson violated his Eighth Amendment rights. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Eighth Amendment "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), it does not "permit inhumane ones" either, Farmer v. Brennan, 511 U.S. 825, 832 (1994).

Accordingly, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)).

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)), and is actionable under 42 U.S.C. § 1983, id. at 105. To succeed on a deliberate indifference claim under § 1983, a plaintiff must satisfy a two-prong standard. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d. 484, 497 (1st Cir. 2011). First, a plaintiff must show, as an objective matter, that he has a "serious medical need[]" that received inadequate care. Id. A serious medical need is that which "has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990)). "The 'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment." Id. at 497-98 (quoting Gaudreault, 923 F.2d at 208). The serious medical need inquiry is fact-specific and must be

- 9 -

tailored to the specific circumstances of the case. See id. at 500 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)).

Second, even if the plaintiff satisfies the objective prong, "the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs." Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014). Deliberate indifference under this subjective prong requires evidence that the failure in providing treatment to the plaintiff was purposeful. Id. Thus, an "inadvertent failure to provide adequate medical care" does not give rise to a constitutional claim. Estelle, 429 U.S. at 105-06; see also Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993). This prong can also be met by showing a "wanton disregard to a prisoner's needs . . . akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." Kosilek, 774 F.3d at 83 (quotations omitted).

Here, the district court concluded that Abernathy's § 1983 deliberate indifference claim failed because he could not show a triable issue of fact as to whether his alleged injuries constituted a serious medical need. Abernathy v. Anderson, 395 F. Supp. 3d 123, 126 (D. Mass. 2019). First, the district court determined that evidence of mere bruises, cuts, swelling, and superficial lacerations that did not require treatment and did not lead to infection or complications did not constitute a serious

- 10 -

medical need under our precedent.  Id. at 133-34.  Second, the court noted that the evidence in the record did not show that the alleged delay in examining Abernathy's injuries exacerbated any medical condition or resulted in permanent damage.  Thus, it was insufficient as a matter of law to show that Abernathy had a serious medical need.  Id. at 134.  Finally, the court held that "[e]ven assuming [that Abernathy's] bruises and cuts were visible to Anderson on April 3," the record did not contain sufficient evidence from which a rational jury could conclude that his need for treatment was so obvious "that even a lay person would easily recognize the necessity for [medical] attention."  Id. (quoting Gaudreault, 923 F.3d at 208).

On appeal, Abernathy argues that the district court erred in granting summary judgment on his § 1983 deliberate indifference claim because there is a genuine issue of material fact as to whether he had a serious medical need within the meaning of the Eighth Amendment.  He offers three theories in support of his position.

First, Abernathy posits that there is a material factual dispute over whether he faced a significant risk of future harm given that a correctional officer presented him to Anderson for medical attention and she refused to perform any medical assessment.  Relying on Leavitt, 645 F.3d 484, 500 (1st Cir. 2011), Abernathy argues that the mere fact that Anderson refused to assess

his injuries "subjected [him] to a substantial risk of harm," thereby constituting a "serious medical need" for Eighth Amendment purposes, regardless of whether his injuries were actually serious.

"[S]ubjecting individuals to a risk of future harm . . . can qualify as cruel and unusual punishment." Kosilek, 774 F.3d at 85-86 (alterations in original) (quoting Baze v. Rees, 553 U.S. 35, 50 (2008)). It is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Leavitt, 645 F.3d at 500 (quoting Smith, 316 F.3d at 186). However, the particular risk of harm which can rise to the level of a serious medical need cannot be a purely hypothetical or abstract risk. Instead, it refers to an actual risk of harm faced by the plaintiff-inmate who does not receive the medical attention that he requests and genuinely needs. See Helling, 509 U.S. at 33 (holding that prospective harm, defined as that which is "sure or very likely to cause serious illness and needless suffering" to an inmate in the future, can be the basis for an Eighth Amendment claim even if the inmate has "no serious current symptoms"); Smith, 316 F.3d at 188 (holding that although "an Eighth Amendment claim may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm and that actual physical injury

is not necessary in order to demonstrate an Eighth Amendment violation," the absence of present physical injury will nonetheless "often be probative in assessing the risk of future harm").

In Leavitt, the plaintiff-inmate was deprived of medication needed to treat his HIV, causing him to suffer severe withdrawal symptoms, such as "nightsweats, chills, fever, fatigue, gastrointestinal problems, including vomiting and constipation, and psoriasis." 645 F.3d at 501. Further, the deprivation of care created long-term risks by exacerbating his underlying HIV condition and making him statistically more likely to develop cancer in the future. Id. We reversed the granting of summary judgment for the defendant because a reasonable factfinder could have found that the defendant's deprivation of care subjected the plaintiff-inmate to serious harm, both short-term and long-term. Id.

Here, Abernathy claims to have suffered cuts, bruises, swelling, and some bleeding as a result of the altercation he had with SBCC's correctional officers on April 3, 2013. Although taking the facts in the light most favorable to Abernathy, Anderson refused to assess Abernathy's injuries that day, Abernathy was medically assessed by SBCC medical staff on April 5, 2013. Moreover, on April 15, 2013, x-rays were taken of his right wrist and thumb, showing "[n]o acute fracture, dislocation, or other

acute bony abnormality." Even though Abernathy alleges that Anderson's refusal to assess his injuries on April 3 created a "risk of harm" to his health, there is no evidence in the summary judgment record showing what that future harm could have consisted of, much less that it would "sure[ly] or very likely [] cause serious illness and needless suffering" to him in the future. Helling, 509 U.S. at 33. Accordingly, as opposed to the plaintiff in Leavitt, for whom the deprivation of HIV medication created a real and concrete risk of future harm, we conclude that, based on the evidence in the record, the risk of future harm claimed by Abernathy is purely hypothetical and that no reasonable jury could find that Anderson's refusal to assess Abernathy's medical needs on April 3, 2013 created an objective risk of future harm grave enough to constitute a serious medical need.

Abernathy next argues that even if he is not entitled to go to trial on his theory that Anderson's denial of medical care subjected him to a "substantial risk of harm," there is nevertheless a triable factual issue as to whether he had a serious medical need because his injuries were so obvious that even a lay person -- a correctional officer -- recognized the need for treatment and escorted him to Anderson.

At the outset, Abernathy has not put forth any affirmative evidence establishing that the correctional officer brought him to Anderson because he "recognized" the severity of

Abernathy's need for medical attention. Instead, Abernathy has merely alleged that he was escorted to the triage room, which is insufficient to create a genuine dispute of material fact as to either his contention that the officers took him of their own accord or that they did so because medical care was necessary. In any event, even if the correctional officer himself thought that Abernathy needed medical attention, that alone is not sufficient for Abernathy's claim to survive.

The serious medical need inquiry for an Eighth Amendment claim of this nature is an objective test, which cannot be met merely by pointing to any one lay person's subjective impression of the seriousness of Abernathy's injuries. The injuries suffered by Abernathy, to wit, cuts, bruises, swelling, and some bleeding, absent, for example, any underlying conditions or future complications, are not the type of wounds that have been typically viewed as constituting a serious medical need. See, e.g., Montes v. Ponce Municipality, 79 Fed. Appx. 448 (1st Cir. 2003) (holding no serious medical need where detainee was active in cell after beating and had only swelling and bruising); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (holding that "[t]he standard for Eighth Amendment violations contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain'") (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

- 15 -

Relying on this Court's statements in <u>Gaudreault</u> defining a serious medical need as "one that has been diagnosed by a physician as mandating treatment, <u>or</u> one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," 923 F.2d at 208 (emphasis added), Abernathy argues that "a medical need may be proven serious based solely on how a lay person would perceive it," regardless of whether treatment is required or if a delay in medical assessment or treatment had an adverse effect. However, such an interpretation is inconsistent with our decision in <u>Gaudreault</u>.

In <u>Gaudreault</u> we affirmed the district court's grant of summary judgment in favor of the defendants on the basis that the plaintiff had failed to display any serious medical needs during the hours following his arrest, even though he was beaten by correctional officers, causing him "multiple bruises, to the forehead, left and right orbits of his eyes, nasal area, left ribs, right flank and left shoulder, and . . . a corneal abrasion and an abrasion on the upper back." <u>Gaudreault</u>, 923 F.2d at 207. Recognizing that the plaintiff's injuries "may have been 'obvious' in the sense that his bruises and abrasions were visible," we concluded that, "the medical record demonstrate[d] that [the plaintiff] did not display any <u>needs</u> so patent as to make lay persons" such as the defendant officers "remiss in failing to arrange for immediate medical attention." <u>Id.</u> at 208. The

- 16 -

plaintiff's injuries failed to constitute a serious medical need because the doctors and nurses who <u>did</u> examine him ten hours after his arrest "found him bruised but unbroken, requiring no more medical care than a sling, an eye-patch and the application of some disinfectant." <u>Id.</u> Although Abernathy criticizes <u>Gaudreault</u>, arguing that how a prisoner's injuries turn out, i.e. whether the injuries ultimately require stitches or become infected, does not "determine whether [a prisoner's] injuries were so obvious that even a lay person would easily recognize the necessity for a doctor's attention," the extent to which a prisoner's injuries are ultimately assessed as insignificant may reflect that an objective lay person would not found the injuries so obvious as to mandate immediate attention in the moment.

Here, there is no evidence in the summary judgment record showing that Abernathy's injuries were significant enough to give rise to a serious medical need. Like the plaintiff in <u>Gaudreault</u>, Abernathy remained "bruised but unbroken," 923 F.2d at 208, after he was allegedly assaulted by the correctional officers on April 3, 2013. Nor is there any evidence in the record that the approximately 48-hour delay in medical treatment had any detrimental effect on Abernathy's injuries. <u>See</u> <u>id.</u> at 208-09 (noting that, although the plaintiff complained that his injuries would cause his "imminent demise," the medical record -- which indicated the plaintiff had suffered a deviated septum, a cyst in

- 17 -

his sinus, and some transient nerve damages -- showed no evidence that the plaintiff's injuries were exacerbated by a delay in treatment); see also Hernández v. Ashe, 745 F. Supp. 2d 15, 24 (D. Mass. 2010) (explaining how "[a] primary factor in determining whether a medical need is serious [in the Eighth Amendment context] is the effect of denial of treatment").  Indeed, x-rays taken of his right thumb and wrist revealed no issues and thus, no need for treatment.  Consequently, there is no evidence in the record from which a reasonable jury could find that the injuries sustained by Abernathy could have been so obviously serious that a lay person would have recognized the need for a doctor's attention, constituting an objective serious medical need for Eighth Amendment purposes.

We do note, however, that this case is different from Gaudreault.  There, the claim was that several correctional officers failed to arrange for medical attention for a detainee whose injuries they did not find to be overly serious.  Here, the claim is that Abernathy reported to Nurse Anderson and she refused to carry out even a simple assessment of his injuries.  That distinction does not bear, however, on whether Abernathy has established a genuine dispute of material fact as to whether he had a "serious medical need" -- as we explain, he has failed to do so, although we emphasize it could have been relevant to the deliberate indifference portion of the Eighth Amendment analysis.

Finally, Abernathy argues that there is a triable issue of fact as to whether the delay in treating his injuries created a serious medical need by subjecting him to "severe pain." According to Abernathy, he was in "significant pain" when he was taken to Anderson and it is for the jury to determine whether her refusal to assess his medical needs "resulted in continued pain" constituting a serious medical need.

Abernathy did not raise this argument below, and, thus the district court did not consider it. Abernathy's argument in the district court about there being a triable issue of fact as to whether he had a serious medical need relied exclusively on "physical trauma." He did not develop an argument that pain itself could constitute a serious medical need. Although in his opposition to summary judgment Abernathy mentioned that he experienced "severe pain," this fleeting reference to pain was not made in connection to the argument he now makes that the pain he experienced constituted a serious medical need. See Pl.'s Opp'n to Def. Krystal Anderson's Mot. for Summ. J. at 7 (noting that "[w]hen he was presented to Nurse Anderson for treatment on April 3, 2013 . . . his wrists were lacerated, bruised, and swollen, . . . and he was bloody and in severe pain," and arguing that, contrary to Anderson's contentions, there is "a genuine issue of material fact as to whether" "this physical trauma" qualifies as a serious medical need). Our case law is clear that, "absent the

most extraordinary circumstances" -- none discernable here -- such a situation calls for finding Abernathy's newly unveiled argument waived.  Teamsters Union, Loc. No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."); see also Gray v. Cummings, 917 F.3d 1, 13 (1st Cir. 2019) (noting that arguments not raised in the district court cannot be advanced on appeal).

### III.  Conclusion

In sum, to defeat Anderson's summary judgment motion, Abernathy had to produce evidence sufficient to allow a reasonable jury to determine that he had a serious medical need under the Eighth Amendment.  Because the evidence in the record would not allow a reasonable jury to conclude that the injuries he allegedly sustained from the handcuffing incident posed a substantial risk of future harm or were so obvious that even a lay person would recognize the need for a doctor's attention, we affirm the district court's entry of summary judgment for Anderson.  No costs are awarded.

**Affirmed.**