**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3229
_____

BEAUTI R. DAS,
Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1:21-cv-13020)
District Judge:  Honorable Noel L. Hillman
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 7, 2023
_____

Before:  CHAGARES, <u>Chief</u> Judge, HARDIMAN, and MONTGOMERY-REEVES,
<u>Circuit</u> <u>Judges</u>

(Opinion filed: September 21, 2023)
_____

OPINION[*]
_____

---

[*]    This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Beauti Das appeals from the District Court's order affirming the Commissioner of the Social Security Administration's ("SSA") determination that Das was not disabled under Title II of the Social Security Act during the relevant period. On appeal, Das challenges the determination that her anemia and heavy menses were not sufficiently severe during the period under review and did not require additional limitations when formulating her residual functional capacity ("RFC") because these conditions did not result in any functional limitations while working. Because we conclude that substantial evidence supported the severity and RFC determinations, we will affirm the District Court's order.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. Das applied for Social Security disability benefits in 2018, alleging she became disabled on August 13, 2017 due to a host of impairments including anemia and heavy menses, the sole conditions relevant to this appeal. Anemia occurs when the body does not have enough iron to produce hemoglobin. It can cause fatigue, weakness, dizziness, headaches, and other symptoms. Heavy menses, also called menorrhagia, is the medical term for menstrual periods with abnormally heavy or prolonged bleeding. It has its own host of symptoms including interruption and restriction of daily activities due to heavy menstrual flow, and it can also cause anemia.

The record reflects that Das's rheumatologist first diagnosed her with anemia in April 2017 but noted that "[s]he is asymptomatic." Administrative Record ("AR") 1010.

In June 2018, her primary care doctor recommended an iron supplement for her anemia, and when Das returned in September for a follow up on her anemia and other conditions she reported "no new complaints." AR 1021. The record of that follow-up appointment indicated that her anemia was well controlled. Das reported having "heavy menstrual flow" but also that she had no fatigue or other symptoms and that she "fe[lt] fine." Id. Das continued regularly visiting her rheumatologist through March 2019. Her rheumatologist occasionally noted Das's reports of "heavy menses" but did not otherwise indicate effects of that condition or her associated anemia. In January 2019, shortly before the end of her insured period for the purposes of social security benefits, Das's blood tests reflected that her anemia was "stable." AR 2018.

Das's last insured date was March 31, 2019. In April 2019, Das began seeing a hematologist who started her on a regime of intravenous iron infusions for her anemia, which she received in 2019 and 2020. The hematologist's notes indicate that Das's anemia improved following these infusions.

Through early 2020, Das met with several doctors, including her rheumatologist, primary care physician, gynecologist, and hematologist. The status of her anemia and heavy menses conditions appeared to vary significantly during this period based on her medical records from these visits. Those records reflect that she reported that she was not experiencing abnormal vaginal bleeding during some periods, but she also occasionally reported the opposite. Her hematologist noted in mid-2020 that she "may need to re-start IV iron." She also began taking oral contraceptives in mid-2019 to help control the heavy menses.

3

An administrative law judge ("ALJ") considered and denied Das's claim for Social Security disability benefits in 2020.  As relevant here, the ALJ found that, although Das did have several severe impairments impacting her ability to work, her anemia and heavy menses did not qualify as severe during the period at issue.  Further, the ALJ did not include any limitations related to Das's anemia and heavy menses when formulating her RFC.  Das sought review of the ALJ's decision from the SSA Appeals Council, but her request was denied.  Das subsequently filed a complaint in federal court seeking review of many different aspects of the ALJ's disability determination, including her contention that the ALJ failed to reasonably assess her anemia and heavy menses and include appropriate limitations associated with those conditions in her RFC.  The District Court affirmed the ALJ's decision.  Beauti Rani D. v. Comm'r of Soc. Sec., 2022 WL 4536265, at *7 (D.N.J. Sept. 28, 2022).  As relevant here, it found that substantial evidence supported the ALJ's finding that Das's anemia was a non-severe impairment and that the ALJ properly considered Das's anemia in formulating her RFC.  Id. at **4–5.  Das timely appealed.

## II.[1]

The core issue in this case is whether Das was disabled within the meaning of the Social Security Act at any point during the period between August 13, 2017, the date Das alleged her disability began, and March 31, 2019, the date Das was last insured for

---

[1] The District Court exercised subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). This Court has appellate jurisdiction over the District Court's decision pursuant to 28 U.S.C. § 1291.

disability benefits. An individual is disabled if her impairments are severe enough that she is incapable of performing her previous work and engaging in "any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To make this determination, the ALJ must consider, in sequence, whether a claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or medically equals the requirements of an impairment listed in the regulations and is considered per se disabling; (4) can return to her past relevant work; and (5) if not, whether she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520.

The ALJ here concluded that Das's claimed anemia and heavy menses disabilities failed at step two of the above analysis — in other words, that those conditions were not severe impairments. The ALJ also did not include any limitations in Das's RFC as a result of her anemia and heavy menses, though she considered these conditions when formulating Das's RFC. The relevant regulations, framed in the negative, provide the following explanation of what constitutes a "severe impairment": "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Social Security Administration] will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c); see also id. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Importantly, "the claimant always bears the burden of establishing . . . that she is severely impaired," Zirnsak v. Colvin, 777 F.3d

607, 611 (3d Cir. 2014), though that burden "is not an exacting one," McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

This Court, like the District Court, reviews whether the ALJ's severity determination is supported by substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high." Id. at 1154. Substantial evidence is "more than a mere scintilla" and "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). We do not "weigh the evidence or substitute [our] conclusions for those of the fact-finder," Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), because the question before us is not whether Das is disabled but rather whether the ALJ's finding that she is not disabled is supported by substantial evidence.

Applying the foregoing principles, we hold, as the District Court did, that substantial evidence supports the ALJ's determination that Das did not carry her burden of proving that her anemia and heavy menses conditions were severe. The crux of this severity determination was based on Das's failure to show "limitations arising from this condition." AR 35. The ALJ noted, in particular, that the forms of treatment Das received for anemia were "conservative" and that the record did not include evidence of "abnormal [medical] examination findings in terms of alertness, orientation, or motor function." Id. The ALJ also highlighted that many of Das's medical records from the relevant period indicated that she had not complained of anemia-related symptoms, that her anemia was asymptomatic, and that she had specifically denied abnormal vaginal

6

bleeding on multiple occasions.  Id.  These facts constitute far more than a mere scintilla of evidentiary support for the ALJ's conclusion that Das failed to carry her burden of proving that her anemia and heavy menses conditions were severe, such that "a reasonable mind might accept [this evidence] as adequate to support [the ALJ's] conclusion."  Consolidated Edison Co., 305 U.S. at 229 (citations omitted).

In response, Das asserts that the ALJ's decision "mischaracteriz[ed]" the evidence cited in support of the severity determination, Das Br. at 15, 26, but the record belies that contention.  Das's own recitation of the facts, for example, admits that her doctor's treatment notes from the relevant period "consistently recorded that [Das] was asymptomatic with regard to her anemia."  Das Br. at 8.  The various other issues Das purports to identify are similarly unavailing because they are either irrelevant or are not inaccuracies at all.  Das cannot avoid the fact that no doctor opined at any point that her anemia and heavy menses imposed any specific functional limitations that would hinder her ability to work; the ALJ's observations to this end thus support her determination that those conditions were not severe.

Das also faults the ALJ for allegedly failing to consider certain evidence that she claims undercuts the severity determination, particularly various lab testing data and medical records that the ALJ did not cite in her decision.[2]  But "we do not expect the ALJ

---

[2] Das also argues that the iron infusion treatments she received demonstrate the severity of her condition.  She acknowledges, however, that those infusions fell outside the insured period.  Those transfusions are thus not proper evidence of her conditions' severity.  See 20 C.F.R. § 404.131; Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990) (holding that a claimant must establish that the onset date of disability occurred prior to the expiration of the claimant's insured status).

to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records," so long as the ALJ's analysis is otherwise sufficiently robust. Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). The ALJ's conclusion that Das's anemia and heavy menses conditions were not severe was well-reasoned and thoroughly substantiated by extensive citations to Das's medical records,[3] making it readily apparent that the ALJ "consider[ed] and evaluate[d] the medical evidence in the record consistent with [her] responsibilities under the regulations and case law" regardless of her omission of other potentially relevant information. Id. Das's proffered medical records and test results thus do not alter our conclusion that the ALJ's severity determination was supported by substantial evidence.

The same goes for Das's own testimony, which she cites as additional evidence undermining the ALJ's step two severity analysis. That testimony, however, is minimally probative of the severity of Das's condition because it centered near-exclusively on the effects of her heavy menstrual bleeding around the time of the testimony, not the relevant period for purposes of the disability determination. Moreover,

---

[3] Das's initial claims involved several additional alleged disabilities and a record that stretched more than two thousand pages. Given the breadth of issues to cover and evidence to consider, it was eminently reasonable for the ALJ to cite only portions of the relevant evidence on a particular issue. Her 25-page, single-spaced decision covers each of Das's claims and carefully analyzes them via the five-step test required by 20 C.F.R. § 404.1520, supporting each separate conclusion with dozens of citations to different parts of the record. In fact, she even found certain of Das's other conditions did meet the "severe impairment" standard. Such rigorous analysis assures us that she considered all relevant evidence, even if it was impracticable to explicitly weigh every piece of evidence or to address every countervailing factor for every analytical step in the decision itself.

even if Das's testimony were relevant, an ALJ need not rely on a claimant's own testimony regarding a condition's severity in the face of contradictory medical evidence. See Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985) ("In light of this conflicting medical evidence, the [ALJ] could reasonably find the lack of clinical data . . . outweighed the [claimant's] testimony . . . ."). Given that Das's contemporaneous medical records indicated that she was "asymptomatic" for anemia, not to mention the additional records and statements provided by her physicians containing no indication that her anemia and heavy menses impaired her livelihood in the manner to which she testified, the ALJ's severity determination was supported by substantial evidence irrespective of Das's subjective, minimally-relevant testimony.

Das also argues that the ALJ should have included limitations, such as additional bathroom breaks, in her RFC because of her anemia and heavy menses. RFC is the most an individual is still able to do despite their limitations. 20 C.F.R. § 404.1545(a). An ALJ must "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1520(e). The ALJ must consider both severe and non-severe impairments when assessing an individual's RFC and the limitations considered as part of it. 20 C.F.R. § 404.1545(a)(2). Das's argument that additional limitations needed to be included in her RFC fails because of the inconsistent evidence in the record regarding Das's anemia and heavy menses. Simply put, for the same reason that substantial evidence supports the ALJ's determination that Das's anemia and heavy menses is not a severe impairment, substantial evidence supports

9

the ALJ's decision not to include any limitations in Das's RFC related to Das's anemia and heavy menses.

We emphasize again, in conclusion, that our role on appeal is not to weigh Das's proffered medical records, lab tests, or testimony against the parts of the record cited by the ALJ in her opinion. We instead assess only whether, looking at the record as a whole, a reasonable mind might accept the ALJ's evidence as adequate to support her conclusion that Das's conditions were not severe and did not require the inclusion of additional limitations when formulating her RFC. Biestek, 139 S. Ct. at 1154. We agree with the District Court that the evidence cited by the ALJ, and particularly the contemporaneous medical records indicating both affirmatively and by omission Das's lack of symptoms, was sufficient to meet this low threshold, irrespective of the evidence Das emphasizes here.

III.

For the foregoing reasons, we will affirm the order of the District Court.