# United States Court of Appeals

## For the First Circuit

No. 13-2180

VÍCTOR SANTIAGO-DÍAZ,; CARMEN RIVERA-SANTIAGO,;
CONJUGAL PARTNERSHIP SANTIAGO-RIVERA,

Plaintiffs, Appellants,

v.

MAGALY RIVERA-RIVERA, in her individual and official capacity
as Regional Director of the Bayamón School Region of the
Department of Education of the Commonwealth of P.R.;
MIRNA LÓPEZ, in her individual and official capacity as
Human Resources Director and Associate Secretary of Special
Education of the Department of Education of the Commonwealth
of P.R.; GLORIMAR ANDÚJAR, in her individual and official
capacity as Associate Secretary of Special Education of the
Department of Education of the Commonwealth of P.R.;
MARÍA ORTIZ-MOJICA, in her individual and official capacity
as Director of the Special Education Center in Bayamón, of the
Department of Education of the Commonwealth of P.R.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

Julio César Alejandro-Serrano, on brief for appellants.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
with whom Margarita L. Mercado-Echegaray, Solicitor General, were
on brief, for appellees.

July 17, 2015

**LIPEZ, <u>Circuit Judge</u>**.    Appellant Víctor Santiago-Díaz ("Santiago") claims that, as a result of his membership in the Popular Democratic Party ("PDP"), he was subject to impermissible political discrimination after the New Progressive Party ("NPP") came to power in Puerto Rico in January 2009.  At the time of that transition, Santiago was a supervisor of the Programmatic Area of the Department of Education's ("DOE") Special Education Center in Bayamón.  He claims that political motivation prompted his reassignment to a new position, a diminution of his supervisory responsibilities, and other adverse employment actions.[1]

Specifically, Santiago alleges political discrimination at the hands of María Ortiz-Mojica ("Ortiz"), the Director of the DOE Special Education Center and Santiago's direct supervisor, when she reassigned him to serve as supervisor of the Academic Area, allocated his previous job duties to an NPP sympathizer, humiliated him in the presence of his co-workers, and demanded the reasons for his absence from work.

He claims that the Human Resources Director and Associate Secretary of Special Education, Mirna López, an NPP member, was aware of and approved his reassignment and the stripping of his

---

[1] Santiago's attorney, Julio C. Alejandro Serrano, failed to appear at oral argument without the prior permission of the Court. In his response to our order to provide a written explanation of his conduct, he asserts that he was infected with Chingunkunya virus in October 2014, subsequently got another 24-hour virus on October 26, and, after consulting with his doctor, he opted not to appear at oral argument.

duties. He further asserts that Glorimar Andújar, the Associate Secretary of Special Education of the DOE and an NPP member, was copied on various complaint letters sent to Ortiz in which Santiago attributed his reassignment to an alleged pattern of political harassment. She failed to respond to these letters.

Finally, Santiago claims that Magaly Rivera Rivera ("Rivera"), the Regional Director of the Bayamón School Region of the DOE and a member of the NPP, "empowered" Ortiz and Andújar "to humiliate [Santiago] and permit[ed] the taking of his functions to be given to NPP sympathizers."

Santiago's claims of political discrimination fail. He has not raised a genuine issue of material fact that his party affiliation was a factor in his reassignment or that his job responsibilities were diminished. His remaining allegations of workplace discrimination are insufficient to constitute adverse employment actions. Consequently, we affirm the district court's grant of summary judgment for appellees.

## I.

### A. Factual Background

We recount the facts in the light most favorable to the non-moving party, Santiago.[2] Adamson v. Walgreens Co., 750 F.3d 73, 76 (1st Cir. 2014).

---

[2] Santiago's wife, Carmen Rivera Santiago, is co-appellant in this action. Because her claims are dependent on his, we treat Santiago as the sole appellant.

Santiago has worked for the DOE for twenty-seven years, fifteen of which have been in the teaching or "Academic Area." A lifelong member of the PDP, he was mayor of the Municipality of Toa Baja from 2001 until 2004. During the PDP administration that held power from 2004 through 2008, Santiago held a number of government positions, including service as the Regional Director of the DOE, a trust position, which he left in early 2008. In February 2008, Santiago was appointed Academic Facilitator IV in the DOE's Center for Special Education's ("the Center") Programmatic Area of the Bayamón School Region, a career position.[3] He held this position at the time of the 2008 elections. The Center consists of three divisions: the Programmatic Area, the Academic Area, and the Administration Area. According to the DOE's organizational chart, the supervisors of the Programmatic Area and Academic Area have equal status in the Center's hierarchy.

The new NPP Governor, Luis Fortuño-Burset, assumed office in January 2009. On March 9, 2009, Governor Fortuño signed the "Special Act Declaring a State of Fiscal Emergency and Establishing a Comprehensive Fiscal Stabilization Plan to Salvage the Credit of

---

[3] In Puerto Rico, a public employee is either a confidential (trust) employee or a career employee. P.R. Laws Ann. tit. 3, § 1349. Pursuant to Puerto Rico law, "career employees have a property interest in their continued employment," Colon-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir. 2006), and employees "who do not hold confidential policy-making positions are protected from adverse employment actions based on political affiliation." Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 7 (1st Cir. 2000).

-4-

Puerto Rico," P.R. Laws Ann. tit. 3, §§ 8791–8810 (2009) ("Law 7"), which empowered government agencies to dismiss thousands of government employees.

Santiago was reassigned in August 2009 from his position as supervisor of the Center's Programmatic Area to supervisor of the Academic Area to perform duties he alleges were "not commensurate with his position." He was informed by his supervisor, Ortiz, that he was being transferred because of the effects of Law 7, which required the Center to fire sixteen staff members. The former supervisor of the Academic Area had been reassigned to serve as a School Director, thus creating a vacancy. Santiago contends that the supervisory duties he had when he oversaw the Programmatic Area were assigned to a member of the NPP, Beda Orsini.[4] His salary remained the same.

Santiago claims that his reassignment and a corresponding reduction in his supervisory role were on account of his membership in the PDP. He additionally asserts that Ortiz humiliated him by "disparagingly demanding in the presence of his coworkers documents as if he was a child." Santiago alleges, without providing any detail, that Ortiz undermined his ability to perform his duties. He also claims that he received a letter from Ortiz inquiring about the reason he was absent from work. He

_____

[4] Santiago inconsistently spells Orsini's first name as "Beda" and "Veda."

-5-

viewed this inquiry as discriminatory because another employee who had been absent for four months was not asked the reason for her absence. Ortiz, like Santiago, is a member of the PDP.

On August 6, 2010, Santiago was reinstated as supervisor of the Programmatic Area. He also retained his post as supervisor of the Academic Area and thus simultaneously served as the supervisor of both Areas.

## B. Procedural Background

Santiago filed the action underlying this appeal pursuant to 42 U.S.C. § 1983, claiming political discrimination in violation of both the First Amendment and his right to due process.[5] The district court granted the defendants' motion for summary judgment, holding that Santiago failed to establish a case of political discrimination against his supervisor, Ortiz, because she is a member of the same political party; against López and Andújar because he produced no evidence that López and Andújar influenced the decision to reassign him; and against Rivera because the undisputed facts in the record showed that Santiago would have been reassigned regardless of his political affiliation. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, (1977). Santiago timely appealed.

---

[5] The district court granted defendants' motion to dismiss Santiago's due process claim, finding that Santiago's sole allegation was that he was "discriminatorily treated because of his political affiliation." Santiago does not contest that ruling on appeal.

We review summary judgment decisions de novo, viewing the evidence in the light most favorable to the non-moving party. Alvarado v. Donahoe, 687 F.3d 453, 458 (1st Cir. 2012); Pineda v. Toomey, 533 F.3d 50, 53 (1st Cir. 2008). The moving party is entitled to summary judgment if "there is no genuine issue as to any material fact." Torres-Martínez v. P.R. Dept. of Corr., 485 F.3d 19, 22 (1st Cir. 2007). A genuine issue of material fact exists if a reasonable jury could find for either party on the contested matter. Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003). Regarding those issues on which the non-moving party, Santiago, bears the ultimate burden of proof, Santiago "cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Torres-Martínez, 485 F.3d at 22 (citing McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

## A. Job Reassignment and Diminution in Responsibilities

To prove his claim of political discrimination, Santiago must show that (1) he and the defendants have "opposing political affiliations," (2) the defendants knew his affiliation, (3) he experienced an adverse employment action, and (4) his political affiliation was a "substantial" or "motivating" factor for the adverse action. Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 5

(1st Cir. 2015) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011)).  On appeal, the parties target the third and fourth factors, and we do likewise.[6]  Hence, to determine whether the district court properly granted summary judgment for the defendants, we must determine whether the evidence adduced by Santiago would permit a rational factfinder to conclude that (1) he experienced an adverse personnel action, and (2) that action "stemmed from a politically based discriminatory animus." Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994); see also Rodriquez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998); Vázquez v. López Rosario, 134 F.3d 28, 36 (1st Cir. 1998).

The evidence Santiago offers concerning his reassignment and diminution of responsibilities falls short in both respects.[7]

---

[6] We note that one of the defendants, Ortiz, is a member of the PDP, as is Santiago. Although the district court granted summary judgment for Ortiz on the ground that there can be no political discrimination among members of the same political party, that legal proposition is incorrect. We previously have held that political discrimination can exist among members of the same party where factions within a party give rise to tensions. See Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 76 (1st Cir. 2000).  Although Santiago has not presented evidence of such a conflict with Ortiz, we bypass the political affiliation issue and address the factors applicable to all four defendants.

[7] Because we conclude that Santiago has failed to adduce evidence showing either political motivation or an adverse action, we need not reach the defendants' Mt. Healthy defense. See Mt. Healthy City Sch. Bd. of Educ., 429 U.S. at 287 (holding that, after plaintiff shows a politically motivated adverse action, the defendants may defeat a First Amendment claim by "establish[ing] that it would have taken the same action regardless of the plaintiff's political beliefs"); see also Ocasio-Hernández, 777 F.3d at 5 n.9.

Santiago fails to identify any evidence showing that his transfer diminished his supervisory role and thus adversely affected his job status. He provides only a conclusory statement that his transfer to the Programmatic Area left him with "duties that were not commensurate with his position." Yet the record shows that, far from being deprived of duties, Santiago was in fact assigned additional responsibilities as supervisor of the Academic Area. He admits that the work done in the Academic Area is more complex than the work done in the Programmatic Area. Moreover, he remained responsible in the Academic Area for the same types of duties he performed in the Programmatic Area -- plus others. In the Programmatic Area, Santiago managed personnel, prepared work plans, and provided service to parents and their children. His duties in the Academic Area encompassed those same tasks, but also, inter alia, required him to supervise Academic Facilitators and communicate with the general public, school directors, teachers, and school superintendents.[8] His salary remained constant, and he was given a larger office in the Academic Area than he had in the Programmatic Area.

---

[8] Santiago intimates in his brief that some of his duties in the Academic Area were assigned to Marta Labrador, an NPP sympathizer. However, Santiago points to no evidence in the record substantiating such a transfer of responsibilities, and we therefore do not consider that assertion in our assessment of his claim. See Torres-Rosado, 335 F.3d at 4.

The record similarly lacks evidence that would permit a jury to conclude that Santiago's reassignment was politically motivated. He points to three facts that he claims show political animus: (1) his reassignment coincided with the transfer of power from the PDP to the NPP in the election of November 2008, (2) an NPP sympathizer, Beda Orsini, assumed the duties of supervisor of the Programmatic Area that he previously performed, and (3) he was asked to perform duties in his new position that were not commensurate with that job.

Although the coincidence of timing between the transfer of political power and a job reassignment may support a claim of political discrimination, it does not on its own suffice. Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 240 (1st Cir. 2012). We already have explained that Santiago has produced no evidence showing that he had a diminished supervisory role in his new position. The record also fails to show that Orsini was hired to fill Santiago's previous position, or that she performed supervisory functions. In Center documents, Orsini is consistently described as "secretarial staff." Indeed, Santiago's sole witness, Aida Ayala-Rolón, testified in her deposition that Orsini was not a supervisor of the Programmatic Area, and that she only handled

referrals. Orsini also stated in an affidavit that she never supervised the Programmatic Area.[9]

Moreover, Santiago admitted in his deposition that Law 7 resulted in the dismissal of numerous DOE staff members, including fourteen or fifteen employees who worked at the Center. It is undisputed that, at the time Santiago was reassigned to supervise the Academic Area, the loss of positions attributable to Law 7 had created a personnel shortage, the position he assumed was vacant,[10] and Santiago was qualified to fill that vacancy.[11] In addition, a year after his reassignment, Santiago was placed in charge of both the Academic and Programmatic areas, further undermining any possible inference that his transfer was attributable to political animus rather than administrative necessity. Hence, Santiago has

---

[9] The district court noted that "[t]o the extent Santiago-Díaz has any other facts supporting his contention that Orsini was hired as his replacement, he has not brought those facts to our attention" and, accordingly, Santiago's "[u]nsupported assertions" are insufficient "to establish a disputed material fact and avoid summary judgment." See Local Rules 56(c) and (e) requiring the nonmoving party to submit a "separate, short, and concise statement of material facts [that] shall admit, deny or qualify the facts supporting the motion for summary judgment." We have previously held that "the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003).

[10] Santiago admitted in his deposition that his predecessor in the Academic Area, Mrs. Williamson, had been reassigned as a School Director.

[11] Santiago acknowledges that an Academic Facilitator IV is eligible to supervise both the Academic and Programmatic Areas.

-11-

failed to generate facts that would allow a rational jury to conclude that his reassignment was an act of political discrimination.[12]

**B. Other Adverse Employment Actions**

Santiago also claims that he suffered politically motivated adverse job conditions when Ortiz demanded that he explain his absence from work and asked him for documents in the presence of his co-workers "as if he was a child."  Although we could reject this claim solely on the ground that Santiago has failed to show that he and Ortiz have "opposing political affiliations," Ocasio-Hernández, 777 F.3d at 5, see supra note 4, we briefly explain why the challenged conduct does not support a claim of political discrimination.

Employment actions are sufficiently adverse to anchor a First Amendment claim under § 1983 "if those actions, objectively evaluated, would place substantial pressure on even one of thick skin to conform to the prevailing political view."  Bergeron v. Cabral, 560 F.3d 1, 8 (1st Cir. 2009) (citing Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989) (en banc)). As Director of the Center, Ortiz was responsible for managing the agency's work and supervising its personnel. In the absence of

---

[12] Given that Santiago has failed to adduce evidence that his reassignment was a politically motivated adverse action, we need not distinguish among the roles of the four defendants in bringing about his transfer.

contrary evidence, her role as Santiago's direct supervisor must be presumed to encompass the authority to ask why he was absent and to demand documents for which he was responsible. No rational jury could conclude that either of those challenged actions -- reflecting the ordinary hierarchy between a superior and subordinate -- "would deter 'a reasonably hardy individual[]' from exercising constitutional rights," Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011) (quoting Agosto-de-Feliciano, 889 F.2d at 1217). Hence, they are inadequate to show political discrimination.[13]

### III.

Santiago has failed to adduce evidence that would permit a rational jury to conclude that his reassignment to the Academic Area was politically motivated or that his job responsibilities were diminished in that position. In addition, his complaints about Ortiz's behavior do not state a First Amendment claim of political discrimination. We therefore affirm the district court's grant of summary judgment.

So ordered.

---

[13] Although appellant's brief intimates a claim that he experienced a hostile work environment, he neither develops such a theory nor articulates the applicable legal standard. Any such claim is therefore waived.